# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Four Holes Land and Cattle, LLC,  )  | Civil Action No. 5:15-cv-03858-JMC |
| ) | |
| Plaintiff,  ) | |
| v.  ) | **FINDINGS OF FACT, CONCLUSIONS** |
| ) | **OF LAW, AND ORDER AND OPINION** |
| Leon Rodriguez, Director, United States  ) | |
| Citizenship and Immigration Services,  ) | |
| ) | |
| Defendant.  ) | |
| _____  ) | |

Plaintiff Four Holes Land and Cattle, LLC ("Plaintiff"), filed this action against Defendant Leon Rodriguez ("Defendant"), Director, United States Citizenship and Immigration Services ("USCIS"), seeking to have the court set aside the USCIS's decision to deny Plaintiff's Petition to hire a foreign farmhand. (ECF No. 1.) Specifically, Plaintiff asserts that the USCIS's decision was arbitrary and capricious under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, and violated Plaintiff's procedural due process rights. (ECF No. 1 at 3 ¶ 14–4 ¶ 25.)

This matter is before the court on Plaintiff's Motion to Set Aside Final Agency Action. (ECF No. 16.) Defendant opposes Plaintiff's Motion and asks the court to uphold the USCIS's decision. (ECF No. 23.) On September 8, 2016, the court held a hearing on Plaintiff's Motion.

After considering all of the evidence and arguments of counsel, the court **DENIES** Plaintiff's Motion to Set Aside Final Agency Action. In support of this determination, the court makes the following findings of fact and conclusions of law:

## I.     FINDINGS OF FACT

The facts of this case, as disclosed by the Administrative Record (ECF No. 15), are as follows:

1.      Plaintiff is a limited liability company with 3 members –H.A.W., E.W.W., and E.W.M.[1] – which operates as "a farm in Bowman, South Carolina, that raises cattle." (ECF No. 1 at 1 ¶ 1, 2 ¶ 7; ECF No. 15 at 18–23.)

2.      USCIS "is a component of the United States Department of Homeland Security (DHS)."  USCIS, https://en.wikipedia.org/wiki/United_States_Citizenship_and_Immigration_Services (last visited Sept. 7, 2016).  USCIS "oversees lawful immigration to the United States" and "officially assumed responsibility for the immigration service functions of the federal government on March 1, 2003 after [] The Homeland Security Act of 2002 dismantled the former Immigration and Naturalization Service (INS) and separated the former agency into three components–USCIS, Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP)."  USCIS, https://www.law.cornell.edu/wex/united_states_citizenship_and_immigration_services_uscis (last visited Sept. 7, 2016).

3.      In 2004, Plaintiff sought to hire FL,[2] a foreign national, as a farmhand.

4.      On September 13, 2004, Plaintiff submitted a Form ETA 750 Application for Alien Employment Certification to the United States Department of Labor ("DOL") on behalf of FL, which application was certified by the DOL for filing with the USCIS on June 18, 2007. (ECF No. 15 at 30–31.)  On the Form ETA 750, Plaintiff stated that FL would be employed at an hourly rate of $7.60 (which amounts to $21,736.00 per year based on an estimated weekly total of 40 hours of work and 15 hours of overtime).  (Id. at 31.)  FL did not state that he was Plaintiff's employee at the time he signed the Form ETA 750 on September 8, 2004.  (Id. at 34.)

5.      In or around July/August of 2007, Plaintiff filed with the USCIS a Form I-140

---

[1] Plaintiff referred to its members by their initials since the Administrative Record was filed under seal.  (ECF No. 16 at 1.)
[2] The parties referred to the alien-beneficiary by his initials since the Administrative Record was filed under seal.  (E.g., ECF No. 23 at 2 n.1.)

Immigrant Petition for Alien Worker (the "Petition"). (Id. at 27–29.) In the Petition, Plaintiff reported its gross annual income as $1,000,000.00, its net annual income as $400,000.00, and FL's wages as $450.00 per week. (Id. at 28.)

6. On May 15, 2008, the USCIS denied Plaintiff's Petition concluding that Plaintiff failed to establish the ability to pay FL the proffered wage of $21,736.00 from 2004 to the present. (ECF No. 15 at 12–13.) Specifically, the USCIS observed that Plaintiff's "petition lacked evidence of the petitioner's ability to pay the beneficiary the proffered wage from 2004 to the present." (Id. at 13.) The USCIS's decision was without prejudice and allowed for the submission of another petition with supporting documentation. (Id.)

7. On June 6, 2008, Plaintiff appealed the decision of the USCIS to the Administrative Appeals Office ("AAO"). (Id. at 8.) In support of its appeal, Plaintiff submitted handwritten personal financial statements from each of its members. (Id. at 18–23.) The personal financial statements provided information regarding the assets and liabilities of H.A.W., E.W.W., and E.W.M. (Id.) Additionally, Plaintiff provided a letter dated June 2, 2008, from H.A.W. that listed FL's wages from November 2004 through May 2008 and explained that FL was paid in cash because he "is an illegal alien and doesn't have a social security number . . . [and] because banks here will not cash checks from illegal aliens." (Id. at 10.)

8. The AAO dismissed Plaintiff's appeal on June 25, 2010, finding that "the record does not contain any evidence regarding . . . [Plaintiff's] net income or net current assets so that we . . . [can] determine the strength of its business or its ability to pay the proffered wage." (Id. at 2 & 7.) Specifically, the AAO observed that Plaintiff (1) "submitted no Forms W-2 or other evidence that it employed the beneficiary" (ECF No. 15 at 4); (2) "submitted no documentary evidence of its payments to the beneficiary including bank records, pay records, pay stubs, cash

3

receipts, ledgers, or cancelled checks" (id.); and (3) failed to submit any "annual reports, federal tax returns, or audited financial statements." (Id. at 6.) As a result, the AAO concluded that "the record does not contain any evidence regarding . . . [Plaintiff's] net income or net current assets so that we are unable to determine the strength of its business or its ability to pay the proffered wage." (Id. at 7.)

## II.     CONCLUSIONS OF LAW

The Court's Jurisdiction and the Law Relevant to the Instant Matter

1. The court has jurisdiction under 28 U.S.C. § 1331 as a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

2. The APA provides a mechanism for judicial review of executive action by waiving sovereign immunity in cases in which plaintiffs sue the United States for relief other than money damages. See id. at § 702. The scope of this waiver, however, is not unlimited. Rather, the APA limits review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Id. at § 704.

3. Under § 706(2)(A) of the APA, a reviewing court may set aside an agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Defenders of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 393 (4th Cir. 2014) (quoting § 706(2)(A)). An agency's decision is arbitrary and capricious "if the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287–88 (4th Cir. 1999) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43

(1983)). The scope of a court's review under this standard is narrow and highly deferential. See AES Sparrows Point LNG v. Wilson, 589 F.3d 721, 733 (4th Cir. 2009) (citation omitted). "[T]he court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made." Id. (citation omitted).

4.     Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–07, 1151–1381, 1401–1504, 1521–1525 & 1531–1537, a non-citizen skilled worker may obtain a visa to work in the United States. 8 U.S.C. § 1153(b)(3)(A)(i). Authority to administer the INA has been delegated to the DHS and sub-delegated to the USCIS. 8 U.S.C. § 1103(a)(1); 8 C.F.R. § 2.1.

5.     To obtain a labor certification to enter the United States and attain lawful permanent resident status as a skilled worker, a prospective immigrant must "find a job with an employer willing to sponsor him or her through the time-consuming application process for labor certification and issuance of an immigrant visa." Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 616 (4th Cir. 2010). "The prospective employer first must apply on behalf of the alien to the Department of Labor ("DOL") for a Labor Certification." Id. (citing 8 U.S.C. § 1153(b)(3)(C); United States v. Ryan–Webster, 353 F.3d 353, 355 (4th Cir. 2003)). "The DOL's issuance of a Labor Certification indicates that the DOL is satisfied that '(1) sufficient United States workers are not able, willing, qualified, and available for a particular job; and (2) employment of a particular alien will not adversely [a]ffect the wages and working conditions of United States workers similarly employed.'" Id. (citing Ryan–Webster, 353 F.3d at 356; 8 U.S.C. § 1182(a)(5)(A)(i)). As part of the certification, the DOL establishes the wage that the prospective employer must pay the prospective employee (the proffered wage). 8 U.S.C. § 1182(p).

6.      If the DOL approves the labor certification, "the prospective employer then submits a petition (technically speaking, a Form I–140 Immigrant Visa Petition for Alien Worker) to the USCIS for an immigrant work visa." Lee, 592 F.3d at 616 (citing Lendo v. Gonzales, 493 F.3d 439, 442 (4th Cir. 2007); 8 U.S.C. § 1153(b)).  "[T]he employer must show that it has the ability to pay the proffered wage starting on the date that the employer filed its application with the DOL (the priority date) and continuing until the USCIS approves the petition." Econo Inn Corp. v. Rosenberg, 145 F. Supp. 3d 708, 710 (E.D. Mich. 2015) (citing 8 C.F.R. § 204.5(g)(2)[3]).

7.      "USCIS has established three primary methods by which an employer can conclusively establish the ability to pay the proffered wage." Taco Especial v. Napolitano, 696 F. Supp. 2d 873, 878 (E.D. Mich. 2010).  "First, an employer can show that he is already employing the alien beneficiary at a wage equal to that specified in the Form ETA–750." Taco Especial, 696 F. Supp. 2d at 878–79 (citing USCIS Mem., Determination of Ability to Pay under 8 CFR 204.5(g)(2) (May 4, 2004)).  "Second, an employer can show that its yearly net income exceeds the expected yearly wage specified in the Form ETA–750." Id. (citing USCIS Mem.,

---

[3] 8 C.F.R. § 204.5(g)(2) provides as follows:

> Ability of prospective employer to pay wage.  Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage.  The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence.  Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.  In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage.  In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

Id.

6

Determination of Ability to Pay under 8 CFR 204.5(g)(2) (May 4, 2004)). "Finally, an employer can show that its net current assets exceed the expected yearly wage specified in the Form ETA–750." Id. (citing USCIS Mem., Determination of Ability to Pay under 8 CFR 204.5(g)(2) (May 4, 2004)). "Even if an employer fails to meet any of the three criteria, the USCIS has the discretion to consider any other evidence provided by the petitioner and may use it to find that an employer has the ability to pay the proffered wage." Id.

      8.      "Evidence of the ability to pay may take the form of annual reports, federal tax returns, or audited financial statements." Econo Inn Corp., 145 F. Supp. 3d at 710 (citing § 204.5(g)(2)). "In some instances, additional evidence such as profit/loss statements, bank account records, or personnel records may be used to establish the ability to pay." Id. (citing § 204.5(g)(2)).

      9.      "If the I–140 is approved, the alien then submits either a Form I–485 application for permanent residence adjustment of status (if he is living inside the country), or a Form DS–230 application for an immigrant visa (if he is living outside the country)." United States v. Hadeed, 376 F. App'x 335, 338 (4th Cir. 2010). "If the USCIS denies a Form I–140 application, an employer may appeal the decision to the USCIS AAO." Taco Especial, 696 F. Supp. 2d at 880 (citing 8 C.F.R. §§ 103.3(a)(1)(iv), 204.5(n)(2)).

The Court's Review

      10.      In support of its Motion, Plaintiff argues that 8 C.F.R. § 204(g)(2) is an ultra vires regulation thereby making the AAO's decision arbitrary and capricious for being in excess of its congressional authority.[4] (ECF No. 16 at 5.) Although the Court of Appeals for the Fourth

---

[4] In Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the United States Supreme Court delineated a 2–step analysis for determining whether an agency acted in an ultra vires fashion. "First, always, is the question whether Congress has directly spoken to the precise question at issue." Id. at 842. "If the intent of Congress is clear, that is the

Circuit has not decided whether § 204.5(g)(2) is an ultra vires regulation, "a number of federal courts have deemed the ability-to-pay requirement reasonable and have rejected arguments—like those Plaintiff[] make here—that the Ability to Pay Regulation is ultra vires to the INA." Econo Inn, 145 F. Supp. 3d at 714 (citing Rizvi v. Dep't of Homeland Sec., 627 F. App'x 292 (5th Cir. 2015)).  After considering the respective analyses of Econo Inn and Rizvi,[5] the court is not persuaded that § 204.5(g)(2) is an ultra vires regulation.  In this regard, the court agrees with the premise that "a rule and/or regulation requiring an employer-applicant to demonstrate a present ability to pay the proffered wage is [a] reasonable means of insuring that skilled worker visa applications are for legitimate, existing employment opportunities, and the requirement is not

---

end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842–43.  However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id. at 843.

[5] Regarding the ultra vires argument, the Rizvi court effectively conveyed why Plaintiff's contention lacks merit:

> Appellants' final contention is that the regulation that requires an employer to demonstrate its ongoing ability to pay the prevailing wage is ultra vires of the statute, which provides that "[a]ny employer desiring and intending to employ . . . an alien entitled to classification under . . . 1153(b)(3) . . . may file a petition with the attorney general for such classification."  The regulation in question, 8 C.F.R. § 204.5(g)(2), allegedly impermissibly expands on this provision by adding requirements of an employer's ability to pay from the priority date until the petition is granted and by restricting what evidence is probative.  Assuming arguendo that this issue need not have been administratively exhausted, the contention fails.  Other provisions of the INA, e.g. 8 U.S.C. §§ 1182(a)(5)(A) (requiring DOL certification, inter alia, that an alien's wages will not adversely affect the wages of similarly situated U.S. workers), and 1103(a)(3) (Secretary of Homeland Security authorized to promulgate regulations and perform other acts deemed necessary for carrying out his authority), also bear on the propriety of the regulation.  Viewed in the proper context, the challenged regulation serves purposes in accord with the statutory duty to grant immigrant status only where the interests of American workers will not be harmed; showing the employer's ongoing ability to pay the prevailing wage is one reasonable way to fulfill this goal.

Rizvi, 627 F. App'x at 294–95.

8

inconsistent with the INA."  Econo Inn, 145 F. Supp. 3d at 715.

11. Plaintiff's next contention is that "[t]o the extent . . . regulation [204.5(g)(2)] is valid, USCIS failed to follow its own binding rule, requiring USCIS to request additional evidence before denying . . . [Plaintiff's] petition."  (ECF No. 16 at 5.)  Citing to the USCIS's Determination of Ability to Pay under 8 CFR 204.5(g)(2) Memorandum (May 4, 2004) (the "DAP Memorandum"), Plaintiff argued in its brief and at the motion hearing that it suffered harm by not being told what documents were necessary to support its Petition as a result of the USCIS's failure to issue a request for evidence ("RFE") to Plaintiff.  (ECF No. 16 at 9.)  Plaintiff further argued that the RFE was required by the DAP Memorandum because the company failed to "submit an annual report, tax return, or audited financial statement with its initial petition to USCIS."  (Id. (citing DAP Mem. at 2 ("If the record does not contain one of the three required documents (annual report, tax return, or audited financial statement), issue a request for evidence.")).)  As it relates to the DAP Memorandum, Plaintiff's contention lacks merit because (1) the RFE requirement was superseded by the protocol set forth in 8 C.F.R. § 103.2(b)(2)(8)[6] and (2) the evidence supports a finding that Plaintiff was constructively made aware of the documentation referenced in a RFE based on the USCIS's reference to § 204.5(g)(2) in its May 15, 2008 decision such that Plaintiff had the opportunity to provide additional documentation in support of its Petition.  Id. ("Evidence of this ability [to pay] shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements.").

12. Plaintiff also argues that AAO's decision is arbitrary and capricious because "(1) the AAO failed to consider that . . . [Plaintiff] is a limited liability company, not a corporation;

---

[6] "If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS."  8 C.F.R. § 103.2(b)(2)(8)(ii).

9

(2) the AAO[] failed to consider the entirety of the ability to pay regulation; and (3) the AAO's "overall magnitude" analysis runs counter to the record evidence." (Id.)  These contentions by Plaintiff are also not persuasive.  First, as to Plaintiff's status as a limited liability company, its attempt to demonstrate the ability to pay by relying on the financial condition of alleged members is ineffective because there is not any document in the Administrative Record (i.e., articles of organization, operating agreement, Tax Form 1065) that expressly demonstrates that H.A.W., E.W.W., and E.W.M. were Plaintiff's members.  (E.g., ECF No. 15 at 6 ("No evidence appears in the record to establish any of the three individuals' relationship to . . . [Plaintiff].").)  Second, as to its arguments regarding the totality of the evidence, Plaintiff's submissions simply do not demonstrate the ability to pay FL the proffered wage by any of the acknowledged methods.  More specifically, Plaintiff only submitted a letter containing unsubstantiated wage figures and unaudited personal financial statements from H.A.W., E.W.W., and E.W.M., which documentation was determined by the AAO to not be enough to establish Plaintiff's ability to pay FL the proffered wage.  Moreover, in its June 25, 2010 decision, the AAO expressly stated that it considered the totality of Plaintiff's circumstances and concluded that those circumstances did not establish its ability to pay.  (Id. at 6–7.)

13.     Based on the court's review of the Administrative Record, there is nothing to suggest that the AAO's decision was arbitrary and capricious.  Plaintiff bore the burden of proof in establishing an ability to pay the proffered wage.  8 U.S.C. § 1361.  It was given several opportunities to submit evidence demonstrating an ability to pay.  The AAO carefully considered the evidence before it and reached a rational conclusion based on that evidence.  In light of these facts, the court finds that the AAO's decision was neither arbitrary nor capricious.

### III.     CONCLUSION

After considering all of the evidence and arguments of counsel, the court finds that Plaintiff is unable to demonstrate that the USCIS's decision to deny Plaintiff's Petition to hire a foreign farmhand was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  Therefore, for the reasons set forth above, the court **DENIES** Plaintiff's Motion to Set Aside Final Agency Action.  (ECF No. 16.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 9, 2016
Columbia, South Carolina